IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| APOLLO 1969 AT LLOYD's<br>a/s/o STORAGE DEVELOPMENT INC.<br>d/b/a GUARDIAN SELF-STORAGE,<br><br>Plaintiff<br><br>v.<br><br>SCALO COMPANIES d/b/a BURNS &<br>SCALO ROOFING,<br><br>Defendant. | 2:20-cv-564-NR |

## MEMORANDUM OPINION

### J. Nicholas Ranjan, United States District Judge

This case arises from property damage following a water leak. Burns & Scalo completed a roofing project for Storage Development Inc. – also known as Guardian Self-Storage – at one of its Pittsburgh properties. *See* ECF 47-2 at 16:10-16. On July 3, 2018, the property flooded. *Id.* at 42:22. Apollo 1969 at Lloyd's ("Apollo") insured Storage Development Inc. *Id.* at 19:10-13. Having paid Storage Development Inc. for the building damage, *id.* at 19:14-17, Apollo is subrogated to its insured's rights, and now sues Burns & Scalo, seeking to recover for breach of contract, negligence, and breach of warranty. Apollo alleges that the flood occurred because the drain Burns & Scalo installed failed. ECF 1, ¶10. Burns & Scalo responds that the leak was instead the result of Storage Development Inc.'s negligence. ECF 21, ¶¶7-10.

Importantly, however, the contractual agreement between Storage Development Inc. and Burns & Scalo contained an arbitration provision. To that end, Burns & Scalo moves to dismiss or – in the alternative – stay this action and compel

1

arbitration. Apollo, for its part, argues that the arbitration provision is both invalid and unconscionable.

The Court previously determined that the applicability of the arbitration agreement required some factual development, so it ordered limited discovery "as to whether the relevant parties…were aware of, and intended to enter, the arbitration agreement[.]" ECF 39, pp. 1-2. Now, after carefully considering the parties' arguments, the record adduced in limited discovery, and the applicable law, the Court will grant the motion to compel arbitration.

## **DISCUSSION & ANALYSIS**

Evaluating a motion to compel arbitration entails two questions: "(1) whether the parties entered into a valid arbitration agreement; and (2) whether the dispute at issue falls within the scope of the arbitration agreement[.]" *State Farm Fire & Cas. Co. v. Marrero*, No. 18-433, 2019 WL 1227457, at *2 (E.D. Pa. Mar. 15, 2019) (citing *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009)). Here, the parties' arbitration agreement covers "*any* matters or questions arising out of or relating to this Agreement or the breach thereof." ECF 46-2, pp. 11, 17, 25, 41, 49 (emphasis added). Therefore, the key issue is its validity.

Notably, Apollo itself did not enter into any agreement with Burns & Scalo. But because a subrogee "insurance company stands in the shoes of its insured…[it] is subject to all defenses that could be raised against the insured." *Arch Ins. Co. v. Carol & Dave's Roadhouse, Inc.*, No. 11-801, 2013 WL 607829, at *2 (W.D. Pa. Feb. 19, 2013), *aff'd*, 567 F. App'x 131 (3d Cir. 2014) (citation omitted). Accordingly, if the arbitration agreement is valid as to Storage Development Inc., Apollo is also bound.

The Federal Arbitration Act explains that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. And in Pennsylvania an arbitration agreement is also "valid, enforceable, and irrevocable, save upon such

grounds as exist at law or in equity relating to the validity, enforceability or revocation of any contract." 42 Pa. C.S. § 7303. Under both the FAA and Pennsylvania law, "[a] district court has no discretion in determining whether to enforce the arbitration agreement if a valid agreement exists." *Davis v. Cintas Corp.*, No. 18-1200, 2019 WL 2223486, at *5 (W.D. Pa. May 23, 2019) (Hornak, J.) (citations omitted).[1]

## I. Intent to be bound.

"One component of a valid arbitration agreement is that the parties agreed to arbitrate. To determine this, [courts] apply state-law principles of contract formation." *Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 599-600 (3d Cir. 2020) (citation omitted). For any contract to be enforceable, "both parties [must] manifest[] an intent to be bound." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 582 (3d Cir. 2009). But "a true and actual meeting of the minds is not necessary to form a contract …. Objective manifestations of intent control." *Bush*, 2020 WL 4199077 at *9 (cleaned up).

The parties disagree as to what level of familiarity signatories must have with individual provisions in the contract. Apollo argues that the arbitration clause should not be enforced unless a Storage Development Inc. representative signed each page of the General Conditions and specifically discussed them with Burns & Scalo. ECF 47, pp. 4-5. But under Pennsylvania law, "a promise on the second page of a document

---

[1] As this Court's previous order noted, a summary-judgment standard applies here. ECF 39, p. 3; *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 776 (3d Cir. 2013). And summary judgment may be granted unless "the party opposing arbitration can demonstrate, by means of citations to the record, that there is a genuine dispute as to the enforceability of the arbitration clause." *Id.* (cleaned up). Rule 56 requires the Court to consider the evidence in the light most favorable to Apollo – the non-moving party opposing arbitration – when deciding whether a genuine dispute exists. *Bush v. Comcast Cable Commc'ns Mgmt., Inc.*, No. 19-1004, 2020 WL 4199077, at *5 (W.D. Pa. Jul. 22, 2020) (Ranjan, J.).

3

is binding upon a promisor who signs the first page." *Egyptian Sands Real Est., Inc. v. Polony*, 294 A.2d 799, 803 (Pa. Super. 1972). "[T]he failure to read a contract does not nullify the contract's validity." *Wroblewski v. Ohiopyle Trading Post, Inc.*, No. 12-780, 2013 WL 4504448, at *7 (W.D. Pa. Aug. 22, 2013) (Hornak, J.) (citing *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983) ("[I]n the absence of proof of fraud, failure to read [the contract] is an unavailing excuse and cannot justify an avoidance, modification, or nullification of the contract or any provision thereof.")). Moreover, in the multiple proposals Storage Development Inc. received from Burns & Scalo – including the one its president signed, the text immediately above the signature line specifically warns that *"BY YOUR SIGNATURE BELOW, YOU ALSO AGREE TO ALL OF THE OTHER TERMS AND GENERAL CONDITIONS OF THIS PROPOSAL."* ECF 46-2, pp. 8, 14, 22, 38, 46.

There is no genuine dispute that Storage Development Inc. received the General Conditions, alongside other proposal documents, before signing the contract. Storage Development Inc. admitted as much in response to discovery requests. ECF 42-1, pp. 2-4 (admitting that company officials received the General Conditions as part of an attachment in emails on or about March 22, 2018 and April 6, 2018, and that the General Conditions were present when Steve Cohen – Storage Development Inc.'s president – signed the proposal). Additionally, in his deposition, Mr. Cohen stated that though no one specifically turned his attention to the arbitration provision or reviewed it with him, ECF 47-2, 33:25-34:1, "[a]t some point during the process, Guardian did receive the general conditions," *id.* at 37:2-3. He acknowledged that Mark Knefelkamp – Storage Development Inc.'s facilities maintenance supervisor – received the General Conditions in the March 21, 2018 email, *id.* at 21:21-23, 22:5-8, 49:14-16, and that Mr. Cohen himself received the conditions in an April 5, 2018 email, *id.* at 49:22-50:4, 54:19-24. Importantly, Mr. Cohen admitted that though previous meetings "only went over the estimate and proposal," "towards the end, I

4

received documents for signature and the general conditions were there." *Id.* at 57:23-58:2. When asked whether he could have "stopped and read them and looked at them," he responded, "I could have." *Id.* at 58:3-8. And when asked whether he could have raised any concerns, he replied "yes." *Id.* at 58:9-20. But he did not do so. *Id.* at 59:1-2 ("I never reviewed it, it was never discussed, and I never raised an issue with it.").

Because Storage Development Inc. received the General Conditions beforehand and had an opportunity to review them, executing the contract objectively indicated an intent to be bound by their terms. *Compare Kirleis v. Dickie, McCamey, & Chilcoate, P.C.*, 560 F.3d 156, 161-62 (3d Cir. 2009) (declining to compel arbitration where a former partner was never given a copy of firm by-laws with an arbitration agreement and never signed an agreement incorporating them by reference).

## II. Unconscionability.

"[A]rbitration agreements [may] be declared unenforceable upon such grounds as exist at law or in equity for the revocation of any contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (cleaned up). Unconscionability is one such ground. *Id.* Apollo argues that it would be unconscionable to enforce this arbitration agreement because it was a contract of adhesion. ECF 37, p. 4. In evaluating this defense, the Court again looks to Pennsylvania law. *Bush*, 2020 WL 4199077 at *6.

Apollo, as the party challenging the provision, bears the burden of proving unconscionability. *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999). To invalidate an agreement on this basis, Apollo must prove both procedural and substantive unconscionability. *Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 230 (3d Cir. 2012) (citing *Salley v. Option One Mortg. Corp.*, 925 A.2d 115, 119 (Pa. 2007)). In this case, there is insufficient indication of either.

"A contract is procedurally unconscionable where there was a lack of meaningful choice in the acceptance of the challenged provision" such as formation

5

through "oppression and unfair surprise." *Quilloin*, 673 F.3d at 235 (cleaned up). While Apollo labels the contract here as one of "adhesion," "merely because a contract is one of adhesion does not render it unconscionable and unenforceable as a matter of law." *Salley*, 925 A.2d at 127 (citations omitted). Instead, "[a] more searching inquiry of the parties' respective bargaining positions, level of sophistication, and opportunity to review an arbitration agreement are all relevant considerations[.]" *Bush*, 2020 WL 4199077 at *7.

Here, considering all these factors, there is insufficient evidence of procedural unconscionability. Storage Development Inc. was not obligated to contract with Burns & Scalo; many roofing companies, no doubt, operate in the Pittsburgh area; and Apollo does not provide any reason why Storage Development couldn't consider other providers and solicit other bids.

Further, Storage Development Inc. is a large company with 32 properties. ECF 47-2, 12:24-13:2. Its president, Steve Cohen, is an experienced businessman who has been in the industry since 1987. *Id.* at 12:6-9. And the record here shows that Storage Development Inc. engaged in several rounds of discussions with Burns & Scalo regarding the details of their work proposal. *E.g.,* ECF 46-2, pp. 4-5; 18-19. The record indicates that as part of these discussions, Storage Development Inc. received the general conditions approximately five times. ECF 46-2, pp. 11, 17, 25, 41, 49. Mr. Cohen – or any other company representative – had the opportunity to review and discuss the General Conditions. ECF 47-2, 58:3-59:2. If the conditions were not to Storage Development Inc.'s satisfaction, it presumably could have bargained around them or opted to use a different roofer. *Mellon Bank, N.A. v. Aetna Business Credit, Inc.*, 619 F.2d 1001, 1009 (3d Cir. 1980) ("Commercial parties are free to contract as they desire."). Therefore, the Court does not find unequal bargaining power or unfair surprise here.

While the failure to prove procedural unconscionability dooms that defense, the Court also finds that Apollo has failed to establish substantive unconscionability, as well. "Substantive unconscionability refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." *Harris*, 183 F.3d at 181. "To determine whether a contract is substantively unconscionable, a court must look to the terms of the contract itself and determine whether they are so outrageously unfair as to shock the judicial conscience." *Romero v. Allstate Ins. Co.*, 158 F. Supp. 3d 369, 383 (E.D. Pa. 2016) (cleaned up).

The arbitration provision at issue provides for arbitration procedures "in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association or through such other arbitration procedure as the parties may agree." ECF 46-2, pp. 11, 17, 25, 41, 49. From a review of these rules, the Court cannot find anything so one-sided or unfair as to shock the conscience. Apollo doesn't suggest otherwise. Apollo's main argument regarding substantive unconscionability focuses on the limited-warranty clause in a separate part of the contract. ECF 37, pp. 10-11. But an arbitration provision is a separable agreement, and so whether a separate warranty provision is unconscionable is irrelevant as to the validity of the parties' agreement to arbitrate.[2] *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70-71 (2010) (cleaned up) ("[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate. As a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract."); *Quilloin*, 673 F.3d at 229.

---

[2] Whether this case were to proceed in litigation or arbitration, Apollo could attempt to challenge the enforceability of the warranty clause.

Thus, the arbitration provision is not unconscionable, and the parties are bound by its terms. *Mellon Bank*, 619 F.2d at 1009 ("Absent illegality, unconscionableness, fraud, duress, or mistake[,] the parties are bound by the terms of their contract.") (citations omitted).

## **CONCLUSION**

For the foregoing reasons, Burns & Scalo's motion to compel arbitration is **GRANTED**. An appropriate order follows.

DATE: February 22, 2022                             BY THE COURT:

                                                    /s/ *J. Nicholas Ranjan*
                                                    United States District Judge